# The State of New Hampshire

### SUPERIOR COURT

HILLSBOROUGH COUNTY
SOUTHERN DISTRICT

(XX)COURT
(  ) JURY

### WRIT OF SUMMONS

**David TELLO; and Judith TELLO; of 18 Roy Street, Nashua, NH 03060; on behalf of themselves and all others similarly situated;**

v.

COPY

**FIRST AMERICAN TITLE INSURANCE COMPANY; of One First American Way, Santa Ana, CA 92707**

The Sheriff or Deputy of any County is ordered to summon each defendant to file a written appearance with the Superior Court at the address listed below by the return day of this writ which is the first Tuesday of **September**, MONTH

**2009** YEAR.

The PLAINTIFF(S) state(s):

## IN A PLEA OF THE LAW:

### See attached Declaration.

and the Plaintiff(s) claim(s) damages within the jurisdictional limits of this Court.

INDORSER (sign and print name)

DATE OF WRIT
**July 14, 2009**

**NOTICE TO THE DEFENDANT**

The Plaintiff listed above has begun legal action against you. **You do not have to physically appear** in Court on the return day listed above since there will be no hearing on that day. However, if you intend to contest this matter, you or your attorney must file a written appearance form with the Clerk's Office by that date. (Appearance forms may be obtained from the Clerk's Office.) You will then receive notice from the Court of all proceedings concerning this case. If you fail to file an appearance by the return day, judgment will be entered against you for a sum of money which you will then be obligated to pay.

Robert JJ Lynn
Witness, Walter L. Murphy, Chief Justice, Superior Court.

*Marshall A. Buttrick*
Marshall A. Buttrick, Clerk
NH Superior Court Hillsborough County
Southern District
30 Spring St.
Nashua NH 03060
(603) 883-6461
213-003-4

SIGNATURE OF PLAINTIFF/ATTORNEY

PRINTED/TYPED NAME
**Edward K. O'Brien**

ADDRESS
**O'BRIEN LAW FIRM, PC**
**One Sundial Avenue, 5th Floor**
**Manchester, NH 03104**   PHONE **672-3800**

## RETURN OF SERVICE

_____ COUNTY          _____ , 20 _____
                                                          DATE

I summoned the within named _____ by

☐ giving in hand to _____

☐ leaving at the abode of _____

at _____

an attested copy of this Writ/Petition to Attach at _____ a.m./p.m. this date.


_____
SIGNATURE

_____
TITLE

_____
AGENCY

FEES:  Service:  $ _____
       Travel:     _____
       Other:      _____
       TOTAL:   $ _____

STATE OF NEW HAMPSHIRE

HILLSBOROUGH COUNTY, SS:          CASE NO.: **09-C-**_____
SOUTHERN DISTRICT

| | |
|---|---|
| David TELLO; and Judith TELLO; for themselves and on behalf of all others similarly situated; )<br>)<br>) | |
| ) | **DECLARATION** |
| Plaintiffs; ) | **(Class Action)** |
| ) | |
| v. ) | |
| ) | |
| FIRST AMERICAN TITLE INSURANCE COMPANY; )<br>) | |
| ) | |
| Defendant. ) | |

### SUMMARY OF CLAIMS

1.     Plaintiffs file this consumer class action on behalf of all homeowners who refinanced their home loans in New Hampshire and were charged lender title insurance premiums by First American Title Insurance Company that exceeded the discounted "reissue rate" mandated by law.

2.     In New Hampshire, title insurers may only charge premiums that are calculated in accordance with their own rate filings. First American has filed one rate for home purchases, and another rate–which is 40% lower–for simple mortgage refinances.

3.     Plaintiffs contend First American breached its implied contracts by charging them and the class members title insurance premiums that were computed on its higher rate (applicable to home purchases), rather than on its lower rate (applicable to refinances (Count I); and that First American is unjustly enriched in the amounts of the overcharges (Count II), which plaintiffs now seek to recover for themselves and the class.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to RSA 491:7; it has personal jurisdiction over the defendant pursuant to RSA 510:4 (I), in that it resides in, has conducted trade or business in, and/or has established relationships with the State of New Hampshire adequate to confer jurisdiction on this Court. Venue is proper in the Hillsborough County Superior Court because plaintiffs David Tello and Judith Tello reside in this venue. Plaintiffs specifically allege that the classwide amount in controversy is less than $5 million.

## PARTIES

5.     The Plaintiffs, who bring this consumer class action for themselves and a class of similarly situated New Hampshire consumers, are David Tello and Judith Tello, both of 18 Roy Street, Nashua, NH 03060.

6.     Defendant, First American Title Insurance Company ("First American" herein), is a California domicilary with its principal place of business at One First American Way, Santa Ana, CA 92707. First American Title Insurance Company ("First American" herein) is a California domicilary with its principal place of business at One First American Way, Santa Ana, CA 92707. It is a wholly-owned subsidiary of the First American Financial Corporation, which is the nation's largest provider of real estate-related financial and information services. First American is licensed to conduct title insurance business in 47 states, including New Hampshire. It is one of the nation's largest title insurance underwriters, issuing millions of title insurance policies each year, and it is New Hampshire's single largest title insurer.

2

## FACTUAL BACKGROUND

### A. Title Insurance

7.    The two most common types of title insurance policies are (i) "lender," "loan," or "mortgagee" policies which protect lenders, and (ii) "owner" policies, which protect property buyers.  Lenders require borrowers to purchase a lender title policy as a condition of making a home loan.  A lender policy protects the lender by insuring the lender against certain defects in title to the property.  Lender title insurance policies remain in effect until the loan is repaid.

8.    Lenders also require borrowers to purchase for the lenders' benefit new lender title insurance policies when homeowners refinance their homes.  When the new loan is used to pay off the existing loan, the old lender policy expires.  These replacement lender title insurance policies are sometimes referred to as "refinance" or "refinance" title insurance policies.  When the home is refinanced, the title to the property remains in the existing owner.  Therefore, the owner typically does not obtain a new owner title insurance policy.

9.    Title insurers issue policies through title agents that are authorized by agency agreements to issue title insurance commitments and title policies on the insurer's behalf.  Before a home loan is closed, the title agent conducts a title examination to identify liens on the property, including the existing mortgage. The title agent will then issue a lender title commitment which promises to the lender that a first-lien title insurance policy will be issued upon satisfaction of the liens identified in the title commitment, including the payoff of the existing mortgage lien.  The lender title commitment is provided to the

3

lender and a copy is not given to the borrower.  Similarly, the actual lender title policy is

delivered to the lender post-closing, and a copy is not given to the borrower.  The lender

title commitment and lender title policy are form documents.  The lender title insurance

premium is identified on form documents issued at closing called federal HUD

Settlement Statements.

10.     The sale of title insurance is problematic.  One leading business publication

recently called the title insurance industry a "racket" that sells a product that is both

"outdated" and "largely unneeded."  See, *Inside America's Richest Insurance Racket*,

Forbes, Nov. 13, 2006.  The pricing aspect of title insurance is especially problematic:

recent press coverage has revealed that title insurers pay out just five to ten cents in

claims for every dollar in premiums they collect.  Melynda Dovel Wilcox, *Home Buyers*

*Beware*, Kiplinger's Oct. 2001, at 96-100.  Indeed, in New Hampshire, First American

pays out *less than* five cents for every premium dollar it collects from homeowners.

Demotech, Inc., *Performance of Title Insurance Companies*, at p. 157, *available at*

www.demotech.com (visited Sept. 25, 2006).

11.     In New Hampshire, title insurance underwriters like First American are

required to file their rates with the state insurance regulatory agency.  Once the "filed

rates" are placed on file with the state regulators, a premium may not be charged for a

title insurance policy at a rate higher or lower than the applicable filed rate.

12.     New Hampshire's Title Insurance Code provides that "[e]very title insurance

company shall file with the commissioner its schedule of fees, every manual of

4

classifications, rules and plans pertaining thereto, and every modification of any of the foregoing which it proposes to use in this state. In every such filing, the company shall set forth that portion of the fee which is designated as premium as herein defined." RSA 416-A:17(II).  Moreover, New Hampshire insurance law provides that "[n]o insurer shall make or issue a contract or policy except in accordance with the filings that are in effect for the insurer as provided in this chapter." RSA 412:16(XII).  Indeed, it is an unfair and deceptive act or practice to "Knowingly collect[] as a premium or charge for insurance any sum in excess of or less than the premium or charge applicable to such insurance . . . in accordance with the applicable classifications and rates filed with and approved by the commissioner." RSA 417:4(XII).

13.    The filed rates for refinance lender title insurance policies are significantly lower than the full basic title insurance rates.  This is because title insurance companies perform less work in preparing a refinance policy.  Refinance transactions generally occur when there has been no change in ownership of the property (other than the occasional addition or deletion of a family member in the land records) and a short period of time has elapsed between the refinance transaction and the prior mortgage transaction (be it the initial home purchase or a prior refinance).  As a result, title insurers typically rely on the comprehensive title search conducted at the placement of the original policy, and spend considerably less time and money conducting an updated title search for placement of a refinance policy.

14.    During the course of the title examination, the title agent will identify the date

and original principal amount of the existing mortgage loan that is to be refinanced. When the agent identifies an existing loan made by an institutional mortgage lender it is required to give the borrower the applicable mandatory "refinance rate". Title insurance underwriters and agents know that one of the conditions to making the existing institutional mortgage loan was that a title insurance policy was issued at that time.

15.    At all times during the Class Period defined below, First American's duly-filed refinance rate provided that Applicants who were merely refinancing an existing institutional first mortgage less than five years old were entitled to receive a discount of 40% of the otherwise applicable standard rate. The lower filed rate applicable to refinance title insurance policies is mandatory.

16.    First American did not give plaintiffs the mandatory lower rate on their refinance policies. Moreover, it commonly fails to give the mandatory lower reissue rate to borrowers in New Hampshire who refinance their institutional first mortgage loans.

**B.  Plaintiffs' Title Insurance Policies**

17.    Plaintiffs David Tello and Judith Tello purchased their home in 2000. They refinanced their mortgage several times over the next few years with new institutional first mortgage loans, and each time they were required to pay for a lender's policy of title insurance. More recently, in November, 2005, they refinanced their existing mortgage with a new first mortgage loan from Countrywide Home Loans, Inc., an institutional mortgage lender. In connection with this transaction, they were required to pay for a lender's policy of title insurance in the amount of $194,000. Then, in February, 2008,

6

less than five years later, they refinanced that institutional first mortgage loan with

another new first mortgage loan, this one from Lendingtree Loans, Inc., another

institutional mortgage lender, in the amount of $251,000. In connection with this

refinance transaction, First American offered to sell them, and they agreed to apply for, a

policy of title insurance in the amount of $251,000, naming the new lender as the insured.

They paid First American $756 for this lender's policy, out of their loan proceeds.

**C.  Facts common to the plaintiffs' and class members' transactions**

18.    When plaintiffs and class members refinanced their institutional first mortgage

loans, they applied to and contracted with First American for the required lender's policy

of title insurance coverage.

19.    During its contractual performance, First American obtained or reviewed initial

title orders, examinations and owners' affidavits which showed the transactions

constituted refinances of existing institutional first mortgage loans less than five years

old, and that neither the property nor its ownership had materially changed.

20.    Because the lender policy issued in connection with each of the plaintiff's

refinance transactions involved the same premises and was insuring a mortgage executed

by the same borrower, and the refinance proceeds were paying of the existing

institutional first mortgage loan which was less than five years old, defendant was

required to charge the lower rate for the refinance policy. The rate should have been 40%

lower than the ordinary full rate contained in defendant's filed rates.

21.    Defendant charged each of the plaintiffs and class members the full amount,

7

instead of the 40%-lower amount, and it thereby overcharged each of them.

22.    Plaintiffs and class members paid First American a premium based upon the higher rate for coverage, rather than upon the lower, applicable rate, and were damaged thereby. Naturally, any consumer made aware of the opportunity to save hundreds of dollars in premiums would not have chosen to pay the higher rate and to thereby forego a savings mandated by law, and instead would have chosen to pay the lower rate.

## CLASS ACTION ALLEGATIONS

23.    Plaintiffs bring this action as a class action under NH Super. Ct. Rule 27-A, on behalf of themselves and all others similarly situated. The class ("Class") is comprised of all persons in New Hampshire who, during the Class Period, a) refinanced an institutional first mortgage loan on real estate located within New Hampshire; b) paid for a lenders title insurance policy issued by First American in connection with the refinance; c) defendant's title examination records show ownership had not changed and that the mortgage being refinanced was an institutional first mortgage loan less than five years old; and d) they were charged a premium that exceeded First American's filed "reissue rate" for the lenders policy of title insurance. The Class Period is from January 1, 2008 forward.

24.    The Class as defined is manageable, identifiable, and unambiguous based on objective information and criteria, including the computer paper records regularly maintained in Defendant's course of business. Plaintiffs are members of the class, and the identities of the other class members are readily ascertainable based upon objective

8

information and criteria.

25.  Class requirements are met in that:

a.  <u>Numerosity</u>.  Counsel has conducted an extensive pre- and post-filing investigation into title insurance activities in New Hampshire and across the country. Within the Class Period, First American charged millions of dollars in title insurance premiums in New Hampshire.  A substantial portion of these charges were imposed in connection with residential refinances.  Many of these refinance transactions fit First American's reissue rate classification, yet First American failed to compute the premium based on its lower refinance rate.  Plaintiffs' counsel believe First American has wrongfully collected during the class period, and continues to retain, as much as $1-3 million in excessive, unlawful premiums that rightfully belong to the plaintiffs and class members and which it cannot in good conscience keep.

b.  <u>Commonality</u>.  Questions of law and fact of common and general interest to the class exist as to all class members and predominate over any questions affecting only individual members of the class.  Common questions include:

i.  <u>Count I</u>:

(1)  Whether an implied contract existed between the plaintiffs and class members, on the one hand, and First American, on the other hand; and, if so:

(2)  Whether First American's conduct in choosing to calculate and collect premiums based upon its higher, standard rate even though the subject transactions qualified for its lower, reissue rate constituted a breach of the implied

9

covenant of good faith and fair dealing because it contravened state statutory law and

regulations and thereby constituted an abuse of discretion and a violation of the plaintiffs'

and class members' justified and reasonable expectations.

       ii.   Count II:  Whether First American is unjustly enriched in the amounts

of the premiums it has retained that exceed the maximum permissible charges allowed by

applicable state law and regulations and, if so, whether it would be unconscionable for

First American to retain these ill-gotten gains.

     c.   Typicality.  Plaintiffs' claims are typical of the claims of the class members

they seek to represent.  All such claims arise out of First American's failure to treat their

transactions as simple refinances of institutional first mortgages less than five years old

(when it came time to compute the premium charge, that is), its failure to either apply the

refinance rate at the outset, inform them of its availability, or attempt to obtain their prior

policies.  Plaintiffs and the other class members have been charged, without their

knowledge or consent, the much higher Original rate even though they qualified for the

Reissue rate, and they have thereby suffered injury arising out of First American's

common course of conduct.  Plaintiffs specifically allege that the provisions of First

American's rate manual, and its practices with respect to premium pricing on institutional

first mortgage refinances less than five years old and where neither the premises nor its

ownership has changed, are the same or substantially similar for them and all the class

members.

     d.   Adequate representation.  Plaintiffs will fairly and adequately protect the

interests of the class, and they have no interest antagonistic to or in conflict with those of
the other class members.  They have retained class counsel competent to prosecute
consumer class actions, especially those involving mortgage and title insurance
transactions, and they intend to prosecute this action vigorously for the benefit of the
class.

     e.    <u>Superiority</u>.  A class action is superior to other available methods for the
fair and efficient adjudication of the controversy, in that:

     i.    The interests of the members of the class in controlling the
prosecution and defense of separate actions is minimal.  Individual actions are
uneconomical because the claims will almost always be less than a few hundred dollars
and it is unlikely that more than a handful of class members could find competent and
knowledgeable lawyers willing to provide representation to pursue such small claims on
an individual basis;

     ii.    Few if any absent class members are aware their rights have been
violated and that they may be entitled to receive back their payments to First American
that exceeded the maximum amounts it could permissibly charge under state law;

     iii.    Concentration of the litigation concerning this matter in this Court is
desirable as the class is composed of persons who bought First American's insurance
coverage in connection with New Hampshire residential mortgage loan transactions that
took place within one or the other of these two states;

     iv.    The class is of moderate size and the difficulties likely to be

11

encountered in the management of a class action are not great:

    v.    The discovery will consist largely of electronic and hard-copy records and clerical and administrative review of same;

    vi.    The few legal issues presented are not complex;

    vii.    A failure of justice will result from the absence of a class action, in that the class members will have unwittingly forfeited their hard-earned money to First American, and in that First American will be rewarded for its conduct in failing to conform its pricing practices to the specified procedures and identified rates in its state filings; and

    viii.    Notice can easily be given to class members based upon First American's records. Notice can also be published in our state's larger newspapers. No superior alternative exists for the fair and efficient adjudication of this dispute.

    f.    <u>Predominance</u>. Questions of law and fact predominate over any questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The overarching issue of the lawfulness of First American's practices and procedures concerning premium calculations for lenders policies issued in connection with residential mortgage refinances is the same for every potential class member. Whether each class member was entitled to the Reissue rate is readily determinable from the settlement papers, title examination and affidavits maintained by both the consumers and by First American and its agents. Indeed, the only individual question remaining after a ministerial file review identifies

12

the members of the class concerns the computation of relief to be afforded to each class member and this, too, is readily accomplished by comparing First American's filed Original rate with its filed Refinance rate, and calculating the difference as to each class member's transaction.

## DAMAGES

26.    As a direct and proximate result of First American's conduct described herein, in connection with each and every claim asserted below plaintiffs and class members have suffered actual damages in the amounts of the excessive and unlawful premiums collected from them, together with statutory interest running from the dates upon which they purchased the coverage.  Said damages are readily calculable using the <u>correct</u> rate schedule (the Reissue rate schedule) in First American's filed rate manual.

## COUNT I – BREACH OF CONTRACT (GOOD FAITH AND FAIR DEALING)

27.    Plaintiffs reallege ¶¶1-26 and incorporate them herein by reference.

28.    <u>Plaintiffs and each class member, on the one hand, and First American, on the other hand, intended to create a legally enforceable contract.</u>  The parties engaged in substantially identical refinance transactions involving the purchase and sale of title insurance under facts and circumstances giving rise to an implied-in-fact contract as between them, in that First American offered to sell them title insurance covering their new lenders, and they accepted that offer by applying for the coverage.  Consideration exists as they paid First American for the coverage. Plaintiffs and class members satisfied all existing conditions and fully performed their obligations under the implied contract.

13

29.   <u>The implied contract conferred discretion upon First American such that it had</u>

<u>the power to deprive the plaintiffs and class members of a substantial portion of the</u>

<u>agreement.</u>  First American's tiered premium rate schedule invested in it the discretion to

determine which of its two filed premium rates to use in connection with a particular

application for title insurance.

30.   <u>First American's exercise of discretion exceeded the limits of reasonableness.</u>

Based upon its review of the title order, the title examination and the owners affidavits,

First American knew or should have known plaintiffs' and class members' refinances

qualified for the much lower Reissue rate.  Yet, it charged them the inapplicable, higher

rate instead, which resulted in its routine collection of amounts far in excess of those

calculated under the maximum applicable premium rate specified in its filed rate manual

and permissible under applicable state law and regulations.

31.   <u>First American's abuse of its discretion caused the damages complained of by</u>

<u>the plaintiffs and class members.</u>  In good faith, each of the plaintiffs and class members

unwittingly paid the full premium charge demanded by First American, including the

unlawful portion.

## COUNT II – UNJUST ENRICHMENT

32.   Plaintiffs reallege ¶¶1-31 and incorporate them herein by reference.

33.   Regardless of whether an implied contract existed, First American is unjustly

enriched in the amounts of the excessive and unlawful premiums that it has collected

from plaintiffs and class members, and it cannot in good conscience keep these amounts

and must instead return this portion of the premiums to the plaintiffs and class members, along with interest thereon; and plaintiffs and class members, for their part, are entitled to restitution in these amounts.

34.   First American has overcharged plaintiffs and thousands of borrowers for title insurance during the Class Period by failing to provide the discount applicable to their title insurance policies.

35.   First American has wrongfully obtained, and caused plaintiffs and class members to confer, a benefit upon it.

36.   As an intended and expected result of its conscious wrongdoing as set forth in this Declaration, First American has profited and benefited from overcharging plaintiffs and class members for title insurance such that retaining the benefit is unconscionable or inequitable.

37.   Alternatively, it has passively but knowingly received a benefit such that retaining it would be unconscionable or inequitable.

38.   First American lacked good faith in accepting the overcharged premiums.  It obtained a benefit from plaintiffs and class members by the taking of undue advantage.

39.   It had no justification for charging plaintiffs and class members inflated insurance premiums.  It knew that it was in the best position to know whether plaintiffs and class members were receiving properly discounted premiums.  Rather than charge the correct premium and/or disclose that plaintiffs and class members were entitled to the

15

lower reissue rate, First American through its superior position deliberately collected millions of dollars in inflated premiums.

40.    First American has voluntarily accepted and retained these premium payments with full knowledge and awareness that, as a result of its wrongdoing, plaintiffs and class members paid far more than they should have paid for title insurance.  First American has been unjustly enriched at the expense of the plaintiffs and class members.

41.    First American's actions adversely affected the plaintiffs and class members. Accordingly, they are entitled in equity to seek restitution and/or disgorgement of the wrongful profits, revenues, and benefits to the extent and in the amount deemed appropriate by the Court, and to request such other and further relief as the Court deems just and proper to remedy defendant's unjust enrichment.

16

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, for themselves and the other class members, respectfully request the Court grant the following relief:

a.   An order declaring this action be certified as a class action pursuant to Superior Court Rule 27-A, certifying plaintiffs as class representatives and their attorneys as class counsel.

b.   An order awarding them classwide compensatory or restitutionary damages, along with statutory interest thereon running as of the dates upon which First American collected the excessive and unlawful premiums from them.

c.   An order granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

_____
Edward K. O'Brien
NH Bar. No. 2866
O'Brien Law Firm, PC
One Sundial Avenue, 5th Floor
Manchester, NH 03103
(603) 672-3800

Dated:  July 14, 2009

17

# THE STATE OF NEW HAMPSHIRE

**HILLSBOROUGH, SS.**
**SOUTHERN DISTRICT**                              **SUPERIOR COURT**

## RECEIPT OF WRIT

**DATE:** <u>July 14, 2009</u>

**DOCKET NUMBER:** <u>09-C-403</u>

David Tello and Judith Tello  V.  First American Title Insurance Company

The writ in the above-captioned matter was filed with the Clerk of this Court on: <u>July 14, 2009</u> at 10:37 AM.

The plaintiff or his/her attorney is to attach a copy of this receipt to identical copies of the original writ and deliver them to the Sheriff or other legally authorized entity for service on each named defendant.  Sufficient copies shall be provided to allow for a service copy for each named defendant and a copy for each officer completing service to complete the return.  The return copies shall be filed with the court in accordance with *Superior Court Rule 3.*

**By Order of the Court**

*Marshall A. Butt...*

**Marshall A. Buttrick, Clerk of Court**
**30 Spring Street**
**Nashua, N.H.  03061-2072**
**Tel. (603) 883-6461**

MAB/ghk